**Gaylord BURNELL, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, Commissioner, LeRoy Grant, Walter R. Kelly, George Heltz, Defendants.**

No. 97–CV–6038L.

United States District Court, W.D. New York.

Sept. 3, 1997.

Gaylord Burnell, Dannemora, NY, pro se.

Andrew Lipkind, Buffalo, NY, for Thomas A. Coughlin and Walter R. Kelly.

Michael A. Battle, Attorney General's Office, Buffalo, NY, Andrew Lipkind, Buffalo, NY, for L. Grant and G. Heltz.

## DECISION AND ORDER

LARIMER, Chief Judge.

This action is brought pursuant to 42 U.S.C. § 1983. Plaintiff Gaylord Burnell, who at all relevant times was an inmate at Attica Correctional Facility, seeks damages for alleged violations of the due process clause of the Fourteenth Amendment to the United States Constitution. Presently before me is defendants' motion for summary judgment.

### BACKGROUND

Burnell's claims arise out of events that occurred during an inmate demonstration at Attica Correctional Facility. Subsequent to the demonstration, Burnell was charged by Correction Officer George Heltz ("Heltz") with a leadership role. In accordance with prison regulations, a disciplinary hearing was held concerning the charge, over which hearing officer Lt. Leroy Grant ("Grant") presided and at which Burnell appeared.

At the hearing, Heltz testified that he recognized Burnell as an instigator of the demonstration from a distance of 25 or 30 feet, and also recognized the 'military fatigue type hat' Burnell was wearing. Heltz knew Burnell because Heltz had worked in Burnell's housing block for four years.

Burnell denied that he was an instigator. He testified that at all times he was waiting for the demonstration to end, along with other inmates, at the side of the yard. Three inmate witnesses (Jihad, Amacher, Boyd) testified, essentially corroborating Burnell's story.

Burnell also sought review of a videotape that was made of the demonstration, to prove that he never urged other inmates to join in the demonstration. Defendant Grant refused to allow the videotape into evidence, but watched it himself.

A fourth inmate testified by telephone from Wende Correctional Facility where he was then housed. This inmate—"Perez"—also had been charged with a leadership role. At the end of Perez' testimony Burnell requested that the misbehavior report charging Perez with a leadership role be submitted into evidence. It was not.

At the conclusion of the hearing, Grant found Burnell guilty of rioting and demonstration and issued a written decision recommending that Burnell's punishment include: (1) 750 days in the special housing unit ("SHU"); (2) one year loss of "good time"; (3) loss of telephone privileges for 750 days; (4) loss of commissary and package privileges for one year; and (5) a concurrent two year term of keeplock. Grant also issued a written statement describing the evidence upon which he relied. Grant found Heltz's "written and unwavering verbal testimony" to be highly credible. Grant noted in particular Heltz's ability to identify Burnell's hat. Grant found the testimony of the inmate witnesses less credible because the testimony was "self-serving" (i.e., it supported the prisoners' claims that they too were uninvolved in the riot).

Thereafter, the Director of Special Housing, acting on behalf of Commissioner Coughlin's office, reduced Burnell's punishment to: one year in SHU with loss of specified privileges, one year loss of "good time", and a one year concurrent term of keeplock with loss of commissary, packages, and telephone privileges.[1] The adequacy of Burnell's hearing subsequently was upheld by the Appellate Division of the New York Supreme Court.

---

1. On the record before me there is no evidence that any aspect of the hearing or 'conviction' was found to be improper or invalid in any way. Burnell's punishment simply was reduced.

*See Burnell v. Coughlin,* 177 A.D.2d 1061, 578 N.Y.S.2d 302 (4th Dep't 1991).

### THIS ACTION

Burnell commenced this lawsuit, *pro se,* on July 24, 1990. Burnell claims that Officer Heltz knowingly wrote a false misbehavior report and that the resulting disciplinary hearing was constitutionally deficient because of numerous procedural errors. Specifically Burnell claims that hearing officer Grant: (1) refused to take testimony from four prospective witnesses; (2) contacted witnesses outside of Burnell's presence; (3) did not provide a written explanation to Burnell for failing to call witnesses; (4) failed to conduct the hearing and evaluate the evidence objectively due to his security-related functions; (5) refused to allow Burnell to view a videotape of the disturbance; and (6) did not allow him to review inmate Perez' misbehavior report or introduce the report into the record.

Defendants now move for summary judgment. Relying on *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), defendants argue that Burnell's punishment did not abridge a liberty interest requiring due process protection. Alternatively, defendants assert that Burnell was afforded all the process he was due. Defendants also contend that qualified immunity shields them from liability. Finally, defendants Kelly and Coughlin maintain that they lack sufficient personal involvement to be held liable.

### DISCUSSION

#### A. Liberty Interest Under Sandin v. Conner

In order to reach the merits of Burnell's claimed procedural infringements the Court must first conclude that Burnell had a liberty interest in remaining free from the penalties imposed. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Sandin,* the United States Supreme Court expressly determined that neither Hawaii state regulations nor the Due Process clause created a liberty interest for a prisoner in avoiding thirty days' disciplinary confinement in SHU. The Court found that state regulations can create a liberty interest only where a restraint imposes "a typical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483, 115 S.Ct. at 2300.

In the wake of *Sandin* several district courts in this Circuit held that SHU or keeplock sentences considerably longer than thirty days did not impose an atypical or serious deprivation necessary to create a liberty interest. *See Edmonson v. Coughlin,* 1996 WL 622626, *5 (W.D.N.Y.1996)(listing cases). Now, however, district courts in the Second Circuit must support with specific factual findings any determination that a period of confinement is "not an atypical, significant hardship." *See Miller v. Selsky,* 111 F.3d 7 (2d Cir.1997)(in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment); *see also Brooks v. DiFasi,* 112 F.3d 46 (2d Cir.1997)(same).

In this case the record contains virtually no information about Burnell's SHU confinement except the duration (730 days, reduced to 365). Without more information about the conditions of Burnell's confinement, I cannot determine whether it was an atypical hardship in relation to the ordinary incidents of his prison life.

However, the *Sandin* Court also recognized that a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Id.* at 482, 115 S.Ct. at 2302. Relying on its prior decision in *Wolff, supra,* the Court noted that loss of good time credits—which were mandated by state law—constituted a liberty interest of 'real substance' because the good time credits created a shortened prison sentence. *See Sandin,* 515 U.S. at 477–78, 115 S.Ct. at 2297.

▉ In this case, part of Burnell's punishment was the loss of one year's good time credits, the availability of which is governed by New York Correction Law § 803 and regulations promulgated thereunder. Because good time credits mandated by state law constitute a liberty interest of 'real sub-

stance,' Burnell's punishment implicates a constitutionally protected liberty interest. *See McGuinness v. Dubois,* 75 F.3d 794, 797, n. 3 (1st Cir.1996)(finding that because good time credits create a liberty interest in a shortened prison sentence, the loss of 100 days' credit compelled analysis of whether due process was satisfied); *Edmonson,* 1996 WL 622626, *7 (noting that "a state-created right to good time is likely to implicate a protected liberty interest"); *Martinez v. Coombe,* 1996 WL 596553, *6 (N.D.N.Y.1996)("Sandin specifically did not overrule *Wolff* in which the inmates challenged the nature of the procedures for loss of good time, and found that a liberty interested existed in retaining one's accrued good time credits").

## B. *Impact of Edwards v. Balisok*

Although Burnell's loss of good time credits implicates a constitutionally protected liberty interest, another impediment to a due process analysis exists. In *Edwards v. Balisok,* —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) the United States Supreme Court determined that an inmate's suit for damages pursuant to 42 U.S.C. § 1983, arising out of alleged procedural due process violations during a prison disciplinary hearing which resulted in loss of good time credits, was barred by its prior decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* an inmate's claim for damages resulting from due process violations during his criminal trial was found **not** cognizable under 42 U.S.C. § 1983 because a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Until the conviction or sentence were invalidated on direct appeal or by a habeas corpus petition, no civil action for damages would lie. *Id.* at 487, 114 S.Ct. at 2372–73, *cited in, Edwards,* —— U.S. at ——, 117 S.Ct. at 1586.

A review of *Heck* is helpful to fully understand *Edwards.* In *Heck,* the inmate plaintiff claimed that his conviction in state court was tainted by several constitutional infirmities, *i.e.,* the state officials had conducted an arbitrary investigation, had knowingly destroyed exculpatory evidence, and had caused an illegal voice identification procedure to be used at the plaintiff's criminal trial. Heck sought damages, pursuant to 42 U.S.C. § 1983, only. He did not seek an injunction or release from imprisonment. At the time Heck commenced the § 1983 action his conviction was on appeal, and it was affirmed during the pendency of the action. Two habeas corpus petitions also were denied.

The Supreme Court found that Heck's allegations were not cognizable under § 1983 because, if valid, the § 1983 judgment would be inconsistent with the previously obtained criminal conviction, effectively rendering it invalid.

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.... *Heck,* 512 U.S. at 487, 114 S.Ct. at 2372.

The *Heck* court specifically identified circumstances in which a § 1983 action might not demonstrate the invalidity of a judgment. "[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery ... and especially harmless error ... such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* at 487, n. 7, 114 S.Ct. at 2372, n. 7. However, the Court went on to specify that in order to recover damages, the inmate would have to prove that he suffered an actual, compensable injury from the unlawful search **not including** the injury of being convicted and imprisoned. *Id.*

In *Edwards,* the Supreme Court extended *Heck* to prison administrative proceedings. There, the inmate plaintiff alleged that his prison disciplinary proceeding resulting in loss of good time credits was deficient in two respects: first, he was denied the opportunity to present witnesses in his defense; second, the hearing officer was deceitful and biased. As for the first allegation, the Supreme Court noted that, if true, this was a procedural defect requiring a new hearing or reinstatement of good time credits. As for the claim of deceit and bias, the Court found this infirmity even greater and noted that prison disciplinary hearings are "not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Id.* at ——, 117 S.Ct. at 1588.

Thus, in an opinion authored by Justice Scalia, the Supreme Court concluded that because the prisoner's allegations of "deceit and bias on the part of the decisionmaker," if valid, would "necessarily imply the invalidity of the punishment imposed" the prisoner's claims were not cognizable in a civil action under 42 U.S.C. § 1983. *See id.* at ——, 117 S.Ct. at 1589.

In a concurring opinion, Justices Ginsburg, Souter and Breyer agreed that the plaintiff's claim was not cognizable under § 1983 "based on allegations of deceit and bias on the part of the decisionmaker." However, they noted that another procedural complaint—such as the failure of prison officials to specify what facts and evidence supported their findings of guilt—would differ, because unlike the 'deceit and bias' defect, it "would not necessarily imply the invalidity of the deprivation of his good time credits." *Id.* at ——, 117 S.Ct. at 1589. Thus, such a claim would be "immediately cognizable under § 1983." *Id.*

After a careful reading of *Edwards* and *Heck* (as well as *Preiser v. Rodriguez,* 411 U.S. 475, 481, 93 S.Ct. 1827, 1831, 36 L.Ed.2d 439 (1973))[2], it is my conclusion that these cases are about remedies, *i.e.,* what remedy is available to an inmate who believes his

rights have been violated at a prison administrative hearing. As I read these decisions, the Supreme Court is sending a loud message: an inmate cannot seek money damages for alleged deprivations arising out of a prison disciplinary hearing by commencing an action under § 1983 unless the results of that hearing already have been invalidated. The proper procedure is to challenge directly the results of the hearing by appeal, administrative review, collateral attack or habeas corpus. If relief from the underlying 'conviction' is obtained, then the inmate might have grounds for an action for damages, under § 1983, against those who violated his rights. The rationale for the Supreme Court's message is clear: it would make little sense for an inmate to recover damages for something that occurred during a hearing, the validity of which remains untested or unchallenged.

I believe this rationale extends to any kind of punishment that implicates a liberty interest. In other words, I believe it extends to situations where the hearing results in excessive SHU confinement (subject to the limitations of *Sandin),* as well as loss of good time credits. The rationale is the same—where an inmate complains about the process and procedure at the hearing that cause him to lose good time, or result in confinement in SHU, his remedy is not an action for damages but an action to 'overturn' the conviction. *See Stone–Bey v. Barnes,* 120 F.3d 718, 721–22 (7th Cir.1997)(where punishment imposed was SHU time alone, without any loss of good time credits, the inmate's § 1983 claim was barred by *Heck* because "[t]he 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied"); *Cooper v. Bowles,* 1997 WL 361879, *3 (N.D.Tex.1997)(finding that regardless of what the punishment is, "[i]f [the inmate's] punishment ... result[s] in the deprivation of [a liberty] interest, his civil rights action necessarily implies the invalidi-

---

**2.** *Preiser* held that habeas corpus, and not § 1983, was the appropriate vehicle to challenge allegedly unlawful procedures at a prison disci- plinary proceeding where reinstatement of lost good time credits was sought.

ty of the punishment imposed and is precluded at this time by *Heck v. Humphrey"); see also Higgins v. Coombe,* 1997 WL 328623 (S.D.N.Y.1997)(where inmate claimed that defendants retaliated against him by conducting a biased disciplinary hearing resulting in sixty days keeplock and loss of privileges, court dismissed this substantive due process claim as barred by *Edwards*) Accordingly, I conclude that *Edwards* applies to this action irrespective of which punishment (SHU or loss of good time) is at issue.

■ That said, it is certain that *Edwards* precludes Burnell's claim that hearing officer Grant failed to conduct the hearing and evaluate the evidence objectively due to his security-related functions. This allegation is precisely the same as that made by the inmate in *Edwards, i.e.,*—the hearing officer was deceitful and biased. Thus, this claim, if valid, obviously would necessarily imply the invalidity of Burnell's 'conviction.'

I also find that Burnell's remaining claims are barred by *Edwards.* In my opinion, those claims—that Grant refused to take testimony from four witnesses; contacted witnesses outside of Burnell's presence; did not provide a written explanation to Burnell for failing to call witnesses; refused to allow Burnell to view a videotape, or review inmate Perez' misbehavior report and introduce it into the record—are essentially the same as the deceit/bias claim: each, if valid, implies the invalidity of the conviction. Essentially, Burnell claims that the judgment entered against him after the disciplinary hearing was flawed due to several different irregularities in the proceedings. If any of those claims were sustained in the § 1983 lawsuit, such a finding would certainly "imply" that the prior disciplinary 'conviction' was invalid. If Burnell is allowed to proceed now with these claims in a § 1983 action, he could recover money damages based on conduct that supported his 'conviction.' I do not believe that the *Edwards* majority would countenance such a result. Burnell is attempting to utilize the "wrong," or at least premature, vehicle to remedy the perceived deficiencies in his disciplinary hearing. *Heck* and *Edwards* compel the conclusion that Burnell's claims must be dismissed.

Since all the matters raised by Burnell in this civil action relate directly to the hearing and evidence relied on by the hearing officer, it is virtually impossible to parse each claim out separately and make a harmless error determination as to whether that matter formed a basis for the disciplinary determination. If any of the matters alleged here were proven, that certainly would "imply" or suggest that the disciplinary hearing was flawed and the 'conviction' invalid.

I recognize that Justice Ginsburg might find some or all of Burnell's remaining claims "immediately cognizable under § 1983." *Edwards,* —— U.S. at ——, 117 S.Ct. at 1589. However, the *Edwards* majority did not draw the distinctions suggested by the concurrence and I believe that doing so is inconsistent with the overriding intent of *Edwards, Heck* and *Preiser.* I don't believe that the *Edwards* majority intended to limit its application only to those procedural errors which are so egregious as essentially to constitute 'reversible error' regardless of any other factors. Such a narrow reading would require district courts to make what are essentially 'harmless error' determinations about every claim, based only upon the face of the complaint. This seems inconsistent with the overriding message in the Supreme Court's cases: where an inmate complains that a disciplinary hearing is constitutionally defective and the result unjust, he should challenge the conviction directly, not via a § 1983 action.

■ Moreover, in this case, all of Burnell's claims are related to the hearing and to the punishment arising therefrom. Apart from the 'conviction' and 'sentence' arising out of the disciplinary hearing, Burnell does not claim that he has suffered any actual, compensable injury. Thus, because there appears to be no injury other than the 'conviction' and 'sentence' received from the disciplinary hearing, no § 1983 cause of action can be sustained regardless of whether Burnell's claims necessarily imply the invalidity of the conviction. *See Heck,* 512 U.S. at 487, fn. 7, 114 S.Ct. at 2372–73, fn. 7 (even where a claim would not necessarily imply the invalidity of the conviction the inmate must prove that an unlawful act caused him com-

pensable injury, **other than** being convicted and imprisoned). Therefore, in accordance with the Supreme Court's directive, I find that Burnell must assert these challenges concerning his disciplinary hearing 'directly'—*i.e.*, via appeal, habeas corpus petition or other collateral attack. He may not assert these claims pursuant to § 1983 because, to date, the disciplinary hearing 'conviction' has not been invalidated. Any other result would be inconsistent with the rationale of *Edwards, Heck* and *Preiser.*

 Accordingly, I find that *Edwards* bars all of Burnell's claims and this suit should be dismissed in its entirety.[3] *See Muhammad v. Bush*, 121 F.3d 708 (table), 1997 WL 434382, *4 (6th Cir.1997)(text)(inmate's claim that he was denied opportunity to call a witness not cognizable under § 1983 because, if proven, "would necessarily imply the invalidity of the sanctions ..."); *Stone–Bey*, 120 F.3d at 722 (inmate's claim that there was insufficient evidence, and also that there was no written explanation—as "merely a complement to the first" claim—not cognizable under § 1983 because such claims would imply the invalidity of his conviction); *Brodie v. Kuhlman*, 1997 WL 411932, *1 (S.D.N.Y.1997)(inmate's claims of "due process deprivation and bias" not cognizable under § 1983 because they "necessarily imply the invalidity of the punishment imposed"); *Kerr v. Orellana*, 969 F.Supp. 357 (E.D.Va.1997)(inmate's claims that he was denied witnesses, prevented from presenting exculpatory evidence, and that the hearing officer prematurely found him guilty, not cognizable under § 1983 because they would necessarily imply the invalidity of his conviction); *Cooper*, 1997 WL 361879 at *3 (inmate's claims that he was denied right to cross-examine witnesses, to present evidence, to call witnesses, and that the hearing officer predetermined his guilt using fabricated dis-

ciplinary reports, not cognizable under § 1983 because they would imply the invalidity of his punishment).[4]

### SUMMARY AND CONCLUSION

For the reasons set forth above, I hereby GRANT defendants' motion for summary judgment (# 32) in its entirety. The complaint is dismissed.

IT IS SO ORDERED.

---

**3.** Although Burnell primarily seeks money damages, his complaint includes a request that the misbehavior report be expunged from his prison record. This relief too is available only via a habeas corpus petition, and not § 1983. *Preiser*, 411 U.S. at 500, 93 S.Ct. at 1841–42.

**4.** Although it has chosen to do so in unpublished opinions that are expressly 'not precedential' I note that the United States Court of Appeals for

the Ninth Circuit too has dismissed, pursuant to *Edwards*, inmate § 1983 actions that were based upon an inmate's failure to receive a copy of the rules violation, and a hearing officer's exclusion of videotape evidence, because such claims would "necessarily imply the invalidity" of the punishments imposed. *See Ellis v. Gomez*, 117 F.3d 1424 (9th Cir.1997) and *Talton v. Lewis*, 116 F.3d 1486 (9th Cir.1997).