John WARBURTON, 94–B–1581, Plaintiff,

v.

Glenn S. GOORD, Commissioner of Correction; Timothy Murray, Superintendent of the Groveland Correctional Facility; Captain Krempasky, Groveland Correctional Facility; Captain Homrighouse, Groveland Correctional Facility; Lieutenant Wenderlich, Groveland Correctional Facility; Deputy Superintendent Perkins; Groveland Correctional Facility; Lieutenant Richardson, Groveland Correctional Facility; Sgt. Perry, Groveland Correctional Facility; Michael J. Lockwood, Inspector Generals Office; and Justice James B. Canfield, Albany Supreme Court; Defendants.

No. 98–CV–0366F.

United States District Court,
W.D. New York.

July 19, 1998.

John Warburton, Sonyea, NY, pro se.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### *INTRODUCTION*

Plaintiff John Warburton, an inmate of the Groveland Correctional Facility ("Groveland"), has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket # 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket # 2). Plaintiff also seeks appointment of counsel (Docket # 3). Plaintiff claims that the defendants, New York State Department of Correctional Services ("DOCS") Commissioner Goord, Groveland Superintendent Murray, Deputy Superintendent Perkins, Captains Krempasky and Homrighouse, Lieutenants Wenderlich and

Richardson, Sergeant Perry, Inspector General Lockwood and New York State Supreme Court Justice Canfield, violated his constitutional rights. For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), and plaintiff's request for appointment of counsel is denied as moot.

### PLAINTIFF'S ALLEGATIONS

Plaintiff's thirteen-count complaint concerns events which occurred between August 2, 1997 and April 22, 1998, at Groveland Correctional Facility. These events, which include allegations of verbal threats and intimidation by both the defendants and non-defendant corrections officers, searches of plaintiff's cell and desk at the law library, the failure to investigate grievances filed by plaintiff, attempts by confidential informants to entrap plaintiff into taking compensation for legal work, a denial of due process at a hearing which resulted in the loss of goodtime credits, the two-day placement of plaintiff in keeplock, and the questioning of plaintiff regarding a picture sent to Governor Pataki are allegedly part of a vast retaliatory conspiracy on the part of the defendants. Additionally, plaintiff alleges that his constitutional rights have been violated in an Article 78 proceeding in New York State Supreme Court stemming from the above-described events, because defendant Justice Canfield is allegedly unfair to inmates. Plaintiff seeks compensatory damages of $3,000,000 on each count,[1] punitive damages of $250,000 on two counts, restraining orders on twelve counts, release from the custody and supervision of New York State, and the removal of Justice Canfield from the bench.

### DISCUSSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action. Therefore, plaintiff is granted permission to proceed *in forma pauperis.*

Section 1915 mandates that when the court grants *in forma pauperis* status, it also must conduct an initial screening of the action to ensure that it goes forward only if it meets certain qualifications. A review of plaintiff's complaint demonstrates that plaintiff's claims are based on indisputably baseless legal theories. As a result, this action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

■ Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must allege: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

### The Verbal Abuse Claims

■ Throughout his lengthy complaint, plaintiff claims that he was verbally abused, taunted and threatened by defendants. In effect, plaintiff is alleging that his Eighth Amendment right to be free of cruel and unusual punishment has been violated by this verbal abuse. However, "harassment or profanity alone, 'unaccompanied by any [physical] injury, no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Shabazz v. Pico,* 994 F.Supp. 460 (S.D.N.Y. 1998). *Accord Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987) (determining that derogatory remarks do not constitute a constitutional violation); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (affirming the dismissal of a claim that a prison guard called plaintiff names); *Hurdle v. Ackerhalt,* 1993 WL 71370 (N.D.N.Y. Mar.8, 1993) (allegations of harassment and threats do not rise to the level of a constitutional violation). Accordingly, plaintiff's verbal abuse claims are hereby dismissed with prejudice.

---

1. Plaintiff has divided his complaint into thirteen     "counts."

## The Search Claims

■ Plaintiff alleges that the defendants unlawfully searched his law library desk, memory typewriter and the crate in his cell containing his legal materials. To the extent that plaintiff is arguing that his right to privacy has been violated, the courts have continually held that prisoners have only limited rights to privacy. *See e.g. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (upholding constitutionality of double-bunking and body cavity searches); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (prisoners have no reasonable expectations of privacy in their cell). To the extent that plaintiff is arguing that his right of access to the courts has been violated, plaintiff also fails to state a cognizable constitutional claim. While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the mere search of plaintiff's law library desk and crate of legal materials, without more, does not state a constitutional claim. " '[T]he Constitution requires no more than reasonable access to the courts.' " *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995), *quoting Pickett v. Schaefer*, 503 F.Supp. 27, 28 (S.D.N.Y.1980). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer actual harm, that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1995). *Accord Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987).

Thus, plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials—that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. 343, 116 S.Ct. 2174, 2179, 2181, 135 L.Ed.2d 606. Taking plaintiff's claim as true, he nevertheless "offers no facts to explain how these searches prejudiced [plaintiff's] ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y.1995). Accordingly, this Court finds that plaintiff's search claims fail to state a cognizable claim that either his right to privacy was violated or that he has been denied access to the courts, and his claims are hereby dismissed with prejudice.

## The Keeplock Claim

■ Plaintiff alleges that his constitutional rights were violated by his confinement in keeplock from April 22 to April 24, 1998, after he refused involuntary protective custody. Keeplock confinement, in and of itself, does not give rise to a liberty interest. *Sullivan v. Schweikhard*, 968 F.Supp. 910, 913 (S.D.N.Y.1997). In New York State prisons, "keeplock" is a form of administrative or disciplinary segregation in which the inmate is confined, deprived of participation in normal prison routine, and denied contact with other inmates. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir.1989); *see also* 7 NYCRR §§ 301.1–301.7. In a medium security facility such as Groveland, the inmate may remain confined to his cubicle (cube), or be placed in the Special Housing Unit ("SHU"). While package, telephone and commissary privileges may be suspended, and the inmate is confined for 23 hours each day, the privileges of an inmate in disciplinary keeplock are not otherwise more limited that those of prisoners confined in keeplock for administrative detention or protective custody. *McIntosh v. Daddario*, 1998 WL 118156 at *4 (S.D.N.Y. March 17, 1998) (holding that inmate's disciplinary keeplock confinement for 45 days, with loss of package and phone privileges after inmate was found guilty of violating terms of work release program, did not implicate a liberty interest). Keeplock is less confining than is confinement in SHU; keeplocked inmates enjoy such amenities as showers and on-site social and legal visits, for example. *Id.* Inmates receive the same diet as those in general population, and continue to receive and send mail, as well as obtain materials from the prison library. *Saulter v. Hanslmaier*, 1997 WL 177887, at *2 (S.D.N.Y. April 14, 1997).

■ The two-day confinement to keeplock in this case did not give rise to a liberty interest. Plaintiff does not claim that the duration of his sentence was affected by the confinement, or that the terms of his confine-

ment signaled a "dramatic departure" from the basic conditions of his sentence. Plaintiff's term of keeplock, during which he remained in his own cube, was a mere two days; courts have found that longer durations of keeplock confinement, often with a similar loss of privileges, do not implicate liberty interests. *See, e.g., McIntosh,* 1998 WL 118156 at *4–5, (45 days keeplock plus loss of privileges); *Reaves v. Williams,* 1997 WL 10132 at *5 (S.D.N.Y. January 10, 1997) (69 days served in keeplock, of a 90–day sentence). *See also Saulter,* 1997 WL 177887, at *2 (taking into account fact that keeplock inmates were housed in cells identical to those used in general population). Plaintiff's claim regarding his two-day confinement to keeplock is therefore dismissed with prejudice.

### The Good–Time Credit's Claim

■ Plaintiff alleges that defendant Wenderlich conspired to deprive plaintiff of due process at a hearing that resulted in loss of plaintiff's good time credits. To the extent that plaintiff is alleging a violation of his due process rights during the hearing, plaintiff has failed to state a cognizable constitutional claim because he does not state that this hearing was ever appealed or invalidated. Thus, he is seeking damages for alleged due process violations he appears not to have directly challenged. Plaintiff's claim is subject to dismissal because an inmate has grounds for an action for damages under § 1983 against those who may have violated his constitutional rights only if relief from the underlying 'conviction' is obtained. *See Burnell v. Coughlin,* 975 F.Supp. 473, 475–479 (W.D.N.Y.1997) (an inmate cannot seek money damages for alleged deprivations arising out of a prison disciplinary hearing by commencing an action under § 1983 unless the results of that hearing already have been invalidated; the proper procedure is to challenge directly the results of the hearing by appeal, administrative review, collateral attack or habeas corpus). *See also Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (an inmate's claim for damages resulting from due process violations during his criminal trial was not cognizable under § 1983 until the conviction or

sentence was invalidated on direct appeal or by a habeas corpus petition); *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (an inmate's suit for damages pursuant to 42 U.S.C. § 1983, arising out of alleged procedural due process violations during a prison disciplinary hearing, was barred by the holding in *Heck* ); *Higgins v. Coombe,* 1997 WL 328623 (S.D.N.Y. 1997) (where inmate claimed that defendants retaliated against him by conducting a biased disciplinary hearing, court dismissed his substantive due process claim as barred by *Edwards* ). Plaintiff's claim regarding the alleged due process violations at the January 22, 1998 hearing are therefore dismissed with prejudice.

■ To the extent that plaintiff is claiming that defendant Wenderlich conspired to deprive him of his civil rights under § 1983, plaintiff's claim also fails. Plaintiff's conclusory, vague and general allegations of a conspiracy are insufficient to state a cognizable claim under § 1983. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997), quoting *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (citation and internal quotation marks omitted); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (per curiam), *cert. denied* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983), *citing Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981) ("[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"). Plaintiff's conspiracy claim against defendant Wenderlich is therefore dismissed with prejudice.

### The Retaliation Claim

■ Plaintiff claims that the defendant's actions were in retaliation for his litigation activities. The United States Court of Appeals for the Second Circuit has held that:

> [w]e agree ... that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes. If full discovery were to be permitted on every

such claim, the result would indeed be chaotic. However, some of these claims may have merit and, where that is the case, the prisoners making them must be accorded the procedural and substantive rights available to other litigants.

The exact process to be followed will vary according to the circumstances of each case and district courts must exercise their sound discretion in determining the nature and amount of discovery to be allowed. The goal, however, is the same in each case: to sift out those claims where further discovery may possibly yield evidence in support of the prisoner's allegations from those where it is, or becomes, evident that no factual basis exists.

For example, a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually be pursued with full discovery. However, a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants. A third category of allegations also exists, namely a complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery.

*Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). Plaintiff does not offer any details in support of his allegation of retaliation, but rather makes broad and sweeping claims. Accordingly, the Court concludes that plaintiff's claim of retaliation must be dismissed with prejudice.

### The Article 78 Proceeding

■ Plaintiff alleges that defendant Judge Canfield violated his civil rights in an Article 78 proceeding (currently on appeal). However, it is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

Although unfairness and injustice to a litigant may result on occasion, "it is a gener-

al principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.*, at 10, 112 S.Ct. at 287, quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), even though "unfairness and injustice to a litigant may result on occasion," *Mireles*, 502 U.S. at 9, 112 S.Ct. 286. The United States Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983. *See Pierson*, 386 U.S. at 547, 87 S.Ct. 1213.

■ The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 360, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. 1099 (emphasis added) (quoting *Bradley*, 80 U.S. (13 Wall.) at 351 (1871)). Second, a judge is immune only for actions performed in his judicial capacity. *Id.* at 360–63, 98 S.Ct. 1099; *see also Maestri v. Jutkofsky*, 860 F.2d 50 (2d Cir.1988) (finding no immunity where a town justice issued an arrest warrant for conduct which took place neither within nor in a town adjacent to his town, thereby acting in the absence of all jurisdiction); *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir.1974) (finding no immunity where judge assaulted litigant). *Stump* further distinguished between an "excess of jurisdiction" and "the clear absence of all jurisdiction over the subject matter."

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is

permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

*Stump* at 356 n. 6, 98 S.Ct. 1099 (*citing Bradley*, 80 U.S. at 351).

■ Plaintiff does not allege that defendant Canfield acted in the clear absence of jurisdiction but rather that Canfield's decision was biased and prejudicial. Plaintiff's allegations fall within the realm of the immunity doctrine; Judge Canfield is immune from suit based upon his decisions in plaintiff's Article 78 proceeding. In any event, the relief requested by plaintiff, the removal of Justice Canfield from the bench, is beyond the power of this Court. *See* N.Y. CONST. art. 6, § 22 for the procedures governing removal of a state court judge. Plaintiff's claims against Judge Canfield are hereby dismissed with prejudice.

■ Plaintiff also appears to be asking this Court for injunctive relief from the decision of the state court. In essence, such a request would be an appeal in federal court from the decision of the state court trial judge and from possible future decisions of the state appellate court. This type of relief is barred by the Rooker–Feldman doctrine, which arises out of the United States Supreme Court's decision in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under the Rooker–Feldman Doctrine, federal district courts lack subject matter jurisdiction to review state court decisions whether final or interlocutory. *See, e.g., Moccio v. New York State Office of Court Administration*, 95 F.3d 195 (2d Cir.1996) (federal district court lacked subject matter jurisdiction to review constitutional challenge to claims litigated in an Article 78 proceeding); *Garry v. Geils*, 82 F.3d 1362 (7th Cir.1996) (federal district court lacked subject matter jurisdic-

tion to review constitutional challenge to claims litigated in a state court condemnation proceeding); *Gentner v. Shulman*, 55 F.3d 87 (2d Cir.1995) (district court lacked subject matter jurisdiction to hear constitutional challenge to three rulings by state court judges disqualifying plaintiff attorneys from representing clients in pending state criminal proceedings).

■ In order to determine whether the Rooker–Feldman doctrine applies to plaintiff's claims, the "fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court decision judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d at 1365. This court lacks jurisdiction when plaintiff's claims are " 'inextricably intertwined' with the state court's determinations." *Moccio v. New York State Office of Court Administration*, 95 F.3d at 198, *quoting District of Columbia Court of Appeals v. Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206. In his complaint, plaintiff states that his claims are based upon the allegedly biased decisions and rulings made by the trial judge in his Article 78 proceeding. These claims are clearly inextricably intertwined with the state court's determination and are therefore barred under Rooker–Feldman.

■ This Court also finds that it lacks jurisdiction over plaintiff's claims under the abstention doctrine articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Younger doctrine holds that absent unusual circumstances, a federal court cannot interfere with a pending state court proceeding. *Gentner v. Shulman*, 55 F.3d at 89. In order to raise the Younger doctrine, this Court must affirmatively answer the following questions:

(1) is there an ongoing state proceeding; (2) is an important state interest implicated; (3) does the plaintiff have an avenue open for review of the constitutional claims in the state court?

*Id.* (citations omitted). In this case, the answer to each of these questions is "yes."

Plaintiff asks us to interfere in an on-going state Article 78 proceeding, which is currently on appeal. An important state interest is implicated—that of the independence of the courts of the state in proceedings pending before them. Finally, the New York State Supreme Court and the New York State Appellate Division are clearly competent to hear plaintiff's federal constitutional claims and state law claims. "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

This Court hereby finds that plaintiff's Article 78 proceeding claims are barred under both the Rooker–Feldman doctrine and the Younger abstention doctrine, and they are therefore dismissed with prejudice.

### The 42 U.S.C. § 1985 Claim

Plaintiff claims that the defendants engaged in a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985. To state a cause of action under § 1985, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy: (4) whereby a person is either injured or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities,* 7 F.3d 1085, 1087–88 (2d Cir.1993), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), *citing United Brotherhood of Carpenters & Joiners of America Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Plaintiff, however, has failed to demonstrate the violation of a constitutional right by any of the defendants, and thus has failed to satisfy the critical fourth requirement of the *Mian* test. Because plaintiff has failed to state a cause of action for conspiracy to violate his civil rights, this claim must be dismissed.

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is hereby granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e). Plaintiff's request for appointment of counsel is denied as moot. Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED, that the plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice;

FURTHER, plaintiff's request for appointment of counsel is denied as moot;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied; and

FURTHER, that the Clerk of the Court is directed to docket this dismissal as a strike for purposes of 28 U.S.C. § 1915(g).

SO ORDERED.