6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00162-CV


______________________________





IN RE: CLARENCE RANDMOND KNOTTS








 


Original Mandamus Proceeding







 
 



Before Cornelius, C.J., Grant and Ross, JJ.

Opinion by Chief Justice Cornelius



O P I N I O N


 Clarence Knotts has filed a petition for writ of mandamus asking us to direct the trial court
to vacate an order that granted a motion to transfer a child custody proceeding from Titus County
to Rusk County. The underlying proceeding is a motion to modify the parent-child relationship.

 The mother lives in Rusk County and has lived there since 1997. The father lives in Titus
County. The mother and father were divorced by a judgment rendered by the District Court of Titus
County, and that court retained continuing jurisdiction over the parties. The child, Bradley Knotts,
is fourteen years old and has lived with his mother in Rusk County since 1997, except for a brief
time before the motion to modify was filed.

 The father, the relator, argues that because the child has lived in Titus County for over six
months, the court erred in transferring the case to Rusk County, where the child had previously
resided with his mother. 

 The applicable statute, Tex. Fam. Code Ann. § 155.201(b) (Vernon Supp. 2002), provides
that if a proceeding is filed in the county of continuing jurisdiction, and if the child has resided in
another county for over six months, the court must transfer the proceeding to the other county. The
facts here are that the proceeding was filed in Titus County, the county of continuing jurisdiction,
and the child resided for several years in Rusk County, but had been with his father in Titus County
less than two months before the motion to modify was filed.

 As a mandamus proceeding, the question before us is whether the trial court had no authority
to take any action other than to retain the case in Titus County. (1)

 There are two statutes that apply to this situation. The mandatory transfer provision is found
in Tex. Fam. Code Ann. § 155.201(b):

 If a suit to modify or a motion to enforce an order is filed in the court having
continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court
shall transfer the proceeding to another county in this state if the child has resided in
the other county for six months or longer.


The method of determining the county of residence is set out in Tex. Fam. Code Ann. § 155.203 


(Vernon 1996):


 In computing the time during which the child has resided in a county, the

 court may not require that the period of residence be continuous and uninterrupted 

 but shall look to the child's principal residence during the six-month period 

 preceding the commencement of the suit.


 Knotts argues that during the six months before the filing of the motion to modify, the child
principally lived with him in Titus County, so the transfer was improper. He further argues that he
has an agreement with the child's mother that shows an intention to leave the child with him in Titus
County for an extended period of time. 

 The evidence shows that the child stayed in his father's home in Titus County for five months
before the hearing on the motion to modify. But the child lived with his mother in Rusk County for
four years and had only been with his father for less than two months before he filed the motion to
modify on July 27, 2001. And for a substantial portion of the time the child was in Titus County,
it was pursuant to a visitation order issued by the trial court in the divorce. Under these facts, we
cannot conclude that the court abused its discretion by ordering the case transferred to Rusk County.

 Knotts also argues that his agreement with the mother about the custody arrangement
required the court to find that the residence of the child was now with him in Titus County. The
"agreement" is a letter from the mother's new husband to Knotts in response to some other
communication. In the letter the new spouse, apparently in response to some question about the
child, wrote:

 It is not likely that Bradley has thought this out very well. Therefore a temporary
change to equal one school year with a definite end at that time and an option to
revisit custody at that time makes more sense to us.

 

 This is not an agreement; furthermore, the mother's new spouse would not have authority to
make an agreement without the approval of the mother. Even if there was an agreement, it would
not bind the court as to a finding of residence. We cannot conclude that the trial court abused its
discretion by finding that the child had not resided in Titus County for six months before the
commencement of the action to modify. 

 Because we find that the Relator has not shown himself entitled to the relief sought, we deny
the petition for writ of mandamus.

 

 William J. Cornelius

 Chief Justice


Date Submitted: December 18, 2001

Date Decided: December 18, 2001


Publish





1. If the movant complies with the provisions of Tex. Fam. Code Ann. § 155.201(b) (Vernon
Supp. 2002), transfer of a case to a county where the child has resided for more than six months is
a mandatory ministerial duty. Further, an interlocutory appeal is not available to contest the court's
decision. Tex. Fam. Code Ann. § 155.204(e) (Vernon Supp. 2002). Relief by mandamus is
appropriate in those cases where the facts and the law permit only one decision and the trial court
refused to make it. See Proffer v. Yates, 734 S.W.2d 671, 673 (Tex. 1987); Martinez v. Flores, 820
S.W.2d 937, 938 (Tex. App.-Corpus Christi 1991, orig. proceeding).



issues on appeal, he has preserved nothing for our review. Id. Nevertheless, we will consider his
issues individually to the extent possible. See Green, 152 S.W.3d at 841.
            Decker first complains that the dismissal should be reversed because he did not consent to
the trial court's appointment of a master to hear his case, referring to Rule 171 of the Texas Rules
of Civil Procedure as authority. See Tex. R. Civ. P. 171. That does not appear to match this
situation. The trial court did get assistance from an individual to review the case and provide the
trial court some legal analysis and a recommended disposition. The record does not reflect that the
person sat as a master or as a special judge in any respect. The record affirmatively shows that the
trial court issued its own order of dismissal and that the individual who helped the court did not take
any official action, but simply helped the court informally. The cited authority is inapposite, and
error in this respect has not been shown.
(1) Decker Has Not Pled Cognizable Harm in Connection with His Claim That He Has Been Denied 
 Meaningful Access to the Prison Law Library
            The complaint taking center stage in Decker's multifaceted attack is his allegation that,
because of unduly restrictive law library bathroom break rules, Decker, with his various physical
problems, is being effectively denied sufficient prison law library access and, thus, access to the
courts. Yet, Decker has not directed us to any allegation of how those restrictions have denied him
the ability to assert a legitimate legal complaint or defense in the courts, we have carefully searched
the record for any such allegation, and we have found no such allegation in his numerous writings
which appear in the record. In fact, in Decker's writings is evidence of many hours of regular and
extensive access to the prison law library over an extended period.
            Decker argues that the trial court erred by dismissing his lawsuit as having no arguable basis
in law—he argues instead that there was a possibility he might have prevailed on the merits. Decker
argues that his 42 U.S.C.A., Section 1983 claim states a cause of action if he alleges (1) the
deprivation of a federal right (2) by someone who acted under color of state law. Section 1983
provides a remedy when any person acting under color of state law deprives another of rights,
privileges, or immunities protected by the United States Constitution or laws. 42 U.S.C.A. § 1983
(West 2003); see Parratt v. Taylor, 451 U.S. 527, 535 (1981). In applying Section 1983, a court
must first determine whether the plaintiff has been deprived of such a right, privilege, or immunity. 
Thomas v. Collins, 960 S.W.2d 106, 109 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).
            Although Decker does have a right, as articulated by the courts, to adequate access to legal
materials, see Bounds v. Smith, 430 U.S. 817 (1977), it is also without question that, to prevail on
such a claim, he must show that, in some fashion, a legitimate legal claim has been frustrated or
impeded. Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998); Sabers v. Delano, 100 F.3d
82 (8th Cir. 1996) (without showing of cognizable injury, prisoner had no standing to pursue claim
for herself and others); Higgason v. Farley, 83 F.3d 807 (7th Cir. 1996); Jenkins v. Lane, 977 F.2d
266 (7th Cir. 1992); Martin v. Tyson, 845 F.2d 1451 (7th Cir. 1988) (no showing of harm); Hossman
v. Spradlin, 812 F.2d 1019 (7th Cir. 1987) (summary judgment against inmate on civil rights claim
proper since inmate did not state how restrictions denied him access to courts); Arce v. Walker, 58
F.Supp.2d 39 (W.D. N.Y. 1999) (evidence did not establish retaliation in restriction of access to
library); Warburton v. Goord, 14 F.Supp.2d 289 (W.D. N.Y. 1998) (claim fails without proof of how
restrictions denied claimant ability to assert or defend legal claim in court); Geder v. Roth, 765
F.Supp. 1357 (N.D. Ill. 1991) (claim dismissed since inmate did have library access and could not
prove prejudice).
            We find no place in any of Decker's pleadings where he particularizes an allegation that he
was effectively denied access to the courts because of the alleged restrictions in his use of the law
library. Such allegations are essential, and there is authority that supports a dismissal simply for a
failure to make such allegations. Martin v. Davies, 917 F.2d 336 (7th Cir. 1990) (with no allegation
of facts showing harm, plaintiff fails to state claim); Ramirez v. Holmes, 921 F.Supp. 204 (S.D. N.Y.
1996) (failure to allege harm is fatal to claim); Lloyd v. Corrections Corp. of Am., 855 F.Supp. 221
(W.D. Tenn. 1994) (dismissal proper without allegation of harm from library access restrictions);
Oswald v. Graves, 819 F.Supp. 680 (E.D. Mich. 1993) (summary denial proper if allegations do not
set out harm). But see Alston v. DeBruyn, 13 F.3d 1036 (7th Cir. 1994) (abuse of discretion to
dismiss inmate claim as frivolous without giving inmate opportunity to amend to particularize
claims).
            In this case, Decker has provided a substantial calendar admitting many hours that he has
been scheduled for law library use, but nothing to show that his efforts to pursue a legal claim or
defense in court were in any way impeded by prison officials, or of any impact that any overly
draconian "bathroom break" rules might have had on his ability to exercise his constitutional right
of access to the courts. Thus, we find that Decker has not alleged the requisite deprivation of a right,
privilege, or immunity when he complained of officials' "abuse of power" in their decision to place
some constraints on Decker's use of the law library by requiring him to terminate his session if he
chose to go to the bathroom during his use.
            Because of Decker's admissions of extensive law library use, because of his failure to allege
any cognizable harm from the allegedly improper library access restrictions, and because he does not
argue on appeal any desire to amend to set up such allegations of harm, we conclude the trial court
did not abuse its discretion in dismissing Decker's claims which are based on library access
restrictions. See Berry v. Tex. Dep't of Criminal Justice, 864 S.W.2d 578, 580 (Tex. App.—Tyler
1993, no writ).
(2) Decker Has Not Pled Cognizable Harm in Connection with His Claim That He Was Retaliated 
 Against for Exercising Constitutional Rights
            Decker also claims various vague forms of retaliation by prison officials against him for
asserting his constitutional rights. Yet, again, Decker has failed to direct us to any allegation of how
the alleged retaliation has harmed him, we have carefully searched the record for any allegation of
harm, and we have found no such allegation in Decker's numerous writings which appear in the
record. On the same basis as our ruling above on the claims for restricted library access, we
conclude the trial court did not abuse its discretion in dismissing Decker's claims of retaliation.
(3) Decker Has Not Exhausted His Administrative Remedies Sufficient to Pursue His Claim for
      Injunctive Relief
            The trial court dismissed Decker's claim for injunctive relief on the basis that Decker did not
first exhaust his administrative remedies on that point. Decker appears to take issue with that
finding. To understand this dispute, a little background is in order.
            To support filing his original lawsuit, Decker filed various affidavits and grievance forms in
an effort to demonstrate that he pursued internal grievances on his complaints. But, his original
lawsuit contained no complaint about being refused an appropriate lock box for secure storage of his
legal papers. As mentioned above, Decker's principal complaints made the subject of grievances
were various alleged restrictions in his use of the prison law library, including the complaint that he
was allowed fewer hours than were required and that improper bathroom break rules were enforced
against him.
            Later, Decker filed his request for injunctive relief. Exactly what injunctive relief he sought
is unclear and may be subject to serious dispute. The body of his pleading seeking injunctive relief
is conflicting and unclear, containing apparent pleading intermixed with factual allegations in the
form of an affidavit dropped into the middle of his pleading. His prayer seeks only one clearly stated
form of injunctive relief, that prison officials be enjoined from denying him a suitable lock box for
his legal papers. The other portion of his prayer makes a vague request to the effect that prison
officials be enjoined from violating his rights in every respect, but that part of the prayer is entirely
too vague and global to have any effect and, thus, will be ignored for purposes of appellate analysis.
            Therefore, we read his prayer for injunctive relief as requesting only a suitable lock box for
secure storage of his legal papers. The record does not reflect that Decker filed any grievance in
connection with this claim, although he certainly filed grievances on various other issues. Section
14.005 of the Texas Civil Practice and Remedies Code requires that a grievance be filed, and for the
grievance procedures to be exhausted, before an inmate may file such a claim. Tex. Civ. Prac. &
Rem. Code Ann. § 14.005 (Vernon 2003); see Smith v. Tex. Dep't of Criminal Justice–Institutional
Div., 33 S.W.3d 338, 341 (Tex. App.—Texarkana 2000, pet. denied).
            Thus, we conclude that the trial court was correct in dismissing Decker's request for
injunctive relief, without prejudice, due to Decker's failure to exhaust administrative remedies in that
regard.
(4) The Trial Court's Dismissal Order Should Be Modified to Make All the Dismissals Without
      Prejudice
            Though we find the dismissals should be affirmed, to the extent the dismissals were with
prejudice, we find they were improper, requiring a modification of the judgment to remove the "with
prejudice" aspect of the dismissals.
            A dismissal with prejudice constitutes an adjudication on the merits and operates as if the
case had been fully tried and decided. See Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex. 1999). 
Orders dismissing cases with prejudice have full res judicata and collateral estoppel effect, barring
subsequent litigation of the same causes of action or issues between the same parties. See Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 630–31 (Tex. 1992). A dismissal with prejudice is
improper if the plaintiff's failure can be remedied. See Hickman v. Adams, 35 S.W.3d 120, 124 (Tex.
App.—Houston [14th Dist.] 2000, no pet.).
            The trial court dismissed with prejudice Decker's claim of undue restriction on his access to
the prison law library, reasoning that it was impossible for Decker to replead to state a cause of
action. We note that the defect in this claim as pled was that there was no allegation of harm actually
caused by the alleged restrictions. That would seem to be a remediable defect, should Decker really
have any resulting harm he could properly allege. We must conclude that the "with prejudice" aspect
of the dismissal of the claims as to library restrictions is improper and must be removed from the
judgment.
            Decker's claim of retaliation was also dismissed with prejudice, the trial court reasoning that
it was too late for Decker to later file that claim based on the facts alleged in Decker's pleadings. 
Whether that conclusion is true, the proper time to dispose of a late-filed claim is after it is filed. 
We must conclude that the "with prejudice" aspect of the dismissal of this claim is improper and
must be removed.
            Therefore, we modify the trial court's judgment of dismissal to remove the "with prejudice"
aspect of the dismissals. As modified, we affirm the trial court's judgment.
 

                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          July 18, 2006
Date Decided:             August 16, 2006