26 F.3d 14
 Stanley G. PRUE, individually and as a member and President
of the Syracuse Police Benevolent Association, John Doe, a
police officer for the City of Syracuse and an individual
member of the Police Benevolent Association, Inc. and Jane
Doe, a police officer for the City of Syracuse and an
individual member of the Police Benevolent Association,
Inc., Plaintiffs-Appellees,
v.
CITY OF SYRACUSE, Thomas G. Young, individually and
officially as Mayor of the City of Syracuse, Frank Harrigan,
individually and officially as Corporation Counsel for the
City of Syracuse, Anthony Sobon, a Police Officer for the
City of Syracuse and the President elect of the Syracuse
Police Benevolent Association, John Doe, an employee or
agent of the City of Syracuse who cannot be identified, Jane
Doe, an employee or agent for the City of Syracuse who
cannot be identified by the Plaintiff herein as officers or
directors of the PBA, James J. Casamento, Gerald
Birardi, John A. Hierholzer, David A. Sackett, Frank
Palletta, Pierre E. Patnode, Robert Tassone, Joseph A.
Rappazzo, Stephanie Pedrotte, John B. Agne, Constantine
Panarites, Defendants,
Leigh F. Hunt, individually and officially as Police Chief
of the City of Syracuse and Timothy H. Cowin, individually
and officially as 1st Police Chief for the City of Syracuse,
Defendants-Appellants.
 No. 876, Docket 93-7822.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 23, 1993.
Decided June 6, 1994.
 
 Marguerite A. Conan, Office of Corp. Counsel, Syracuse, NY (Susan Finkelstein, Corp. Counsel to the City of Syracuse, of counsel), for defendants-appellants.
 Kevin F. McDonough, Binghamton, NY (Ball, McDonough & Artz, Binghamton, NY, of counsel), for plaintiffs-appellees.
 Before: WINTER, PRATT, and McLAUGHLIN, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 This appeal asks us to determine whether the due-process right to a hearing before termination of a police officer's employment under Sec. 73 of the New York Civil Service Law was clearly established in November 1987. Holding that it was, the district court denied defendants' motion for summary judgment on the grounds of qualified immunity. We reverse.
 
 FACTS AND BACKGROUND
 
 2
 Plaintiff Stanley G. Prue started working as a police officer in the Syracuse Police Department in September 1967. Beginning in October 1976 Prue served as president of the police department's union, the Syracuse Police Benevolent Association ("PBA"). Under the terms of the collective bargaining agreement between the City of Syracuse and the PBA, Prue was assigned to a desk job in the community-relations division of the police department, where his time was completely devoted to union duties. He was not assigned any regular police duties other than his union work.
 
 
 3
 On November 15, 1986, Prue broke his leg in an accident unrelated to his work. Prue maintains that he worked on and off for a total of about six months during the next year, but Police Chief Leigh F. Hunt and First Deputy Chief Timothy H. Cowin contend that Prue was absent from duty for over a year. For the first seven months of his recovery, Prue remained on the payroll through a combination of personal time, bonus time, and vacation benefits. On June 24, 1987, he was granted extended paid sick leave, but after September 27, 1987, he was absent from duty on unpaid leave.
 
 
 4
 On October 15, 1987, Prue wrote a letter to Chief Hunt stating that he was fit to perform the duties of his assigned position and requesting reinstatement to full duty. His request to return to duty was denied, because he had not included any medical authorization with his letter. On November 13, 1987, Prue again asked to be reinstated, and this time attached a statement of his doctor, who indicated that Prue could return to work, but only at a desk job "with no weight bearing on [his] injured leg". Prue's second request was also denied.
 
 
 5
 On November 24, 1987, Prue was terminated under Sec. 73 of the New York Civil Service Law. That section provides:
 
 
 6
 When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability * * * his employment status may be terminated and his position may be filled by a permanent appointment.
 
 
 7
 N.Y.Civ.Serv.Law Sec. 73 (McKinney 1983).
 
 
 8
 In the same letter that notified Prue he had been terminated, Chief Cowin informed Prue that if he wanted a hearing he should respond within five days. Prue did not respond.
 
 
 9
 Instead, Prue initiated an Article 78 proceeding in New York State Supreme Court, Onondaga County, seeking a determination that his termination was improper, reinstatement, back pay, and benefits. See N.Y.Civ.Prac.L. & R. Secs. 7801-06 (McKinney 1981). Prue alleged that his termination was unlawful because his assignment was that of union president, a job that he was fully capable of performing. On September 27, 1988, the New York Supreme Court denied Prue's petition, ruling that Prue had been properly terminated under Sec. 73, because he was unable to perform the duties of a police officer as required under departmental regulations. The state court also held that the posttermination hearing offered to Prue had satisfied due-process requirements under Economico v. Village of Pelham, 50 N.Y.2d 120, 428 N.Y.S.2d 213, 405 N.E.2d 694 (1980). Prue appealed to the Appellate Division, Fourth Department.
 
 
 10
 While that appeal was pending, Prue instituted this action under 42 U.S.C. Sec. 1983 in the United States District Court for the Northern District of New York. His complaint alleged violations of his first and fourteenth amendment rights as well as violations of the Rehabilitation Act of 1973, 29 U.S.C. Secs. 701 et seq. On October 2, 1989, the district court dismissed the complaint, holding that Prue's procedural due-process claim was barred by principles of res judicata, because the issue had already been determined in the Article 78 proceeding.
 
 
 11
 However, on May 11, 1990, the appellate division reversed the decision in the Article 78 proceeding. See Prue v. Hunt, 157 A.D.2d 160, 558 N.Y.S.2d 1016 (App.Div.1990), aff'd, 78 N.Y.2d 364, 575 N.Y.S.2d 806, 581 N.E.2d 1052 (1991). Although the appellate division found that Prue's termination was substantively justified in light of his prolonged absence from his job, it held that the procedures used to effect that termination were insufficient. It ruled that the United States Supreme Court's decision in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), had superseded Economico, and that Sec. 73 therefore should be interpreted as including "the requirements of pre-termination notification and an opportunity to be heard." Prue, 558 N.Y.S.2d at 1019 (citations omitted).
 
 
 12
 On October 24, 1991, the New York Court of Appeals, the highest court in the state, affirmed the appellate division's determination that Loudermill required a pretermination opportunity to be heard in addition to the posttermination procedures required by Sec. 73 and Economico. See Prue v. Hunt, 78 N.Y.2d 364, 369, 575 N.Y.S.2d 806, 581 N.E.2d 1052 (1991). Consequently, Chief Cowin was directed to hold a hearing on whether Prue should be terminated under Sec. 73. Before that hearing could be held, however, Prue submitted adequate medical documentation that he was able to perform the duties of a full-time police officer. As a result, he was certified as fit to return to duty, and he returned to work in January 1991. His claim for back wages was submitted to arbitration.
 
 
 13
 Prue then moved to vacate the district court's October 2, 1989, order insofar as it had dismissed the complaint as to the City of Syracuse, Hunt, and Cowin. See Fed.R.Civ.P. 60(b). On May 1, 1992, the district court granted Prue's motion, holding that its prior order "was based on the collateral estoppel effect of a New York State Supreme Court decision which has since been overturned--a fact which this Court finds clearly warrants relief under the statute."
 
 
 14
 The parties consented to proceed on the merits before a United States magistrate judge, see 28 U.S.C. Sec. 636(c) and Fed.R.Civ.P. 73, and the case was referred to Hon. David N. Hurd. Defendants moved for summary judgment, arguing that the complaint should be dismissed on the grounds of res judicata, failure to state a claim, and qualified immunity. Magistrate Judge Hurd dismissed Prue's claims for punitive damages against the City of Syracuse and against Hunt and Cowin in their official capacities, but otherwise denied the defendants' motion. Defendants Hunt and Cowin have appealed the denial of qualified immunity.
 
 DISCUSSION
 
 15
 A. Appellate Jurisdiction.
 
 
 16
 An order denying an individual official's claim of absolute or qualified immunity may be appealed under the "collateral order" exception established by Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., --- U.S. ----, ----, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993); Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).
 
 As we have previously observed:
 
 17
 If qualified immunity can be determined as a matter of law, we can hear the appeal. If resolution of the immunity defense depends upon disputed factual issues, or upon mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the district court's resolution of the factual questions.
 
 
 18
 DiMarco v. Rome Hosp. & Murphy Memorial Hosp., 952 F.2d 661, 665 (2d Cir.1992); Soares v. State of Conn., 8 F.3d 917, 920 (2d Cir.1993) (appellate jurisdiction limited to circumstances "where the qualified immunity defense may be established as a matter of law or where the district court has committed fundamental error in applying the law").
 
 
 19
 Because resolution of the qualified immunity defense in this case turns solely on a question of law, this appeal is properly before us.
 
 
 20
 B. Qualified Immunity.
 
 
 21
 The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).
 
 
 22
 To establish qualified immunity, defendants must show either that their conduct "did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." Soares, 8 F.3d at 920 (quoting Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir.1990)). For a legal rule to be "clearly established" at the time that an individual's right is allegedly violated, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 639-40, 107 S.Ct. at 3038-39; see also Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir.1988) (boundaries of "right" must be sufficiently definite so that official would understand that his action violated it or so that unlawfulness of his action is evident); Severino v. Negron, 996 F.2d 1439, 1441-42 (2d Cir.1993) (per curiam).
 
 
 23
 Therefore, the issue we must decide in this case is whether at the time Prue was terminated under Sec. 73 it was clearly established that he was entitled to a pretermination hearing.
 
 
 24
 Although Sec. 73 itself does not expressly provide for a hearing of any kind, caselaw in New York did require a posttermination hearing. At the time of Prue's termination in November 1987, the controlling New York case was Economico v. Village of Pelham, 50 N.Y.2d 120, 428 N.Y.S.2d 213, 405 N.E.2d 694 (1980), where the facts were very similar to those now before us. There, Leonard Economico, a policeman who had been injured in an incident unrelated to his work, was terminated under Sec. 73 after being absent from his position for over 18 months. Id. at 124, 428 N.Y.S.2d 213, 405 N.E.2d 694. He brought an Article 78 proceeding, claiming that because he had not been afforded a hearing prior to his dismissal, his due-process rights had been violated. Id.
 
 
 25
 The New York Court of Appeals held that the interest created by Sec. 73 was "something less than an unrestricted property right to continued employment subject to the full panoply of due process protections." Id. at 126, 428 N.Y.S.2d 213, 405 N.E.2d 694. Therefore, a tenured public employee could be properly dismissed from service under Sec. 73 without a hearing. However, "where the facts underlying operation of [Sec. 73] are in dispute, the affected employee must be afforded an opportunity to be heard before that interest is finally extinguished." Id. at 127, 428 N.Y.S.2d 213, 405 N.E.2d 694. In such cases, Economico held, it was constitutionally permissible for the hearing to occur after the termination. Id. at 127-28, 428 N.Y.S.2d 213, 405 N.E.2d 694.
 
 
 26
 Five years later, the Supreme Court decided Loudermill, a consolidation of two cases that involved the dismissals for cause of Ohio state civil servants: one for misrepresenting that he had never been convicted of a felony on his employment application, and the other for failing an eye examination. 470 U.S. at 535-37, 105 S.Ct. at 1489-91. Recognizing that the property interests at stake were created and defined by state law, the Court found that under Ohio law both men possessed property rights in continued employment. Id. at 538-39, 105 S.Ct. at 1491. Because the "root requirement" of the due-process clause was "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest", id. at 542, 105 S.Ct. at 1493, quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in Boddie ), the Court held that "[t]he tenured public employee is entitled [before termination] to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story". Id. at 546, 105 S.Ct. at 1495.
 
 
 27
 Loudermill thus categorically required a hearing before deprivation of a constitutionally protected "property interest". Property interests, however, are " 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law' ". Id. at 538, 105 S.Ct. at 1491 (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). When defendants acted in this case, in 1987, Economico was the prevailing law in New York, and it had described the interest created by Sec. 73 as "something less than an unrestricted property right to continued employment" and "inferior to a full property right." Economico, 50 N.Y.2d at 126-27, 428 N.Y.S.2d 213, 405 N.E.2d 694.
 
 
 28
 Whether or not this type of restricted property interest would fall within the ambit of Loudermill was not clearly established, however, until the New York Court of Appeals set the matter to rest in Prue's Article 78 proceeding. Before that decision in October 1991, "reasonable officials" in defendants' positions would not have known that providing Prue with pretermination notice and an opportunity to be heard was constitutionally required. No New York case had addressed Loudermill's application to the restricted right granted by Sec. 73; indeed, the New York Supreme Court's initial determination that the post-termination hearing offered to Prue under Economico had provided sufficient due-process protection demonstrates that Loudermill's application to Sec. 73 was far from clear.
 
 
 29
 In these circumstances, we conclude that Prue's entitlement to a pretermination hearing was not "clearly established" at the time he was terminated. Defendants Hunt and Cowin were therefore entitled to qualified immunity as a matter of law.
 
 
 30
 We emphasize that our decision today does not dispose of this case in its entirety. It simply holds that qualified immunity shields Hunt and Cowin from suit in their individual capacities. The City of Syracuse remains potentially liable for compensatory damages or equitable relief for any unconstitutional policies that may have been implemented by Hunt and Cowin acting in their official capacities. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). We also note that despite the state court's order that a hearing be conducted "as if the one-year requirement contained in section 73 ha[d] not yet expired", Prue, 558 N.Y.S.2d at 1019, we were informed during oral argument that the hearing had not been held, because Prue had returned to work.
 
 CONCLUSION
 
 31
 The magistrate judge's denial of qualified immunity to defendants Hunt and Cowin is reversed.