Ronald ROUCCHIO, Plaintiff,

v.

Thomas A. COUGHLIN, III, "John" Lester, James F. Recore, Bruce Yelich, Edward Delph and Charles Hernandez, Defendants.

No. 94–CV–4313 (JS).

United States District Court,
E.D. New York.

Sept. 30, 1998.

Jeffrey I. Klein, White Plains, NY, for plaintiff.

George A. Alvarez, State of New York, Office of Attorney General, New York City, Assistant Attorney General, of counsel, for defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Plaintiff Ronald Roucchio ("plaintiff" or "Roucchio") proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 to recover damages from several state officials (collectively "defendants") connected with the administration or oversight of the work release program at Queensboro Correctional Facility, where plaintiff previously was incarcerated. Roucchio alleges that he was deprived of his right to procedural due process, in violation of the Fourteenth Amendment, through the State's revocation of his right to participate in a work release program without permitting him an opportunity to be heard until approximately seven months later.[1]

---

1. Roucchio seeks $600,000 in compensatory damages and $500,000 in punitive damages from

Pending before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants move for summary judgment on three grounds: (1) Roucchio's claim is not cognizable under 42 U.S.C. § 1983 because his removal from work release was not previously invalidated in another forum; (2) Roucchio was afforded all the process which was due; and (3) the defendants are entitled to qualified immunity. Plaintiff, of course, contends that his claim is cognizable under § 1983, and that the defendants are not entitled to qualified immunity.

Roucchio's motion for summary judgment relies upon three arguments. First, Roucchio asserts that he had a reasonable expectation of continued participation in the temporary work release program unless he was removed after a formal notice and hearing. Second, he argues that the defendants' failure to provide him a hearing prior to his removal from work release was more than negligent. Finally, Roucchio charges that the defendants' conduct violated clearly established due process rights of which a reasonable person would have known. Defendants respond that plaintiff was afforded all the process due to him because a programmatic removal from work release does not require a hearing, and in any event, the defendants' actions were reasonable and thus they are entitled to qualified immunity. For the reasons that follow, Roucchio's motion is denied, and the defendants' motion is granted.

## BACKGROUND

The following facts are undisputed, except as where otherwise noted.

At the time of the events in question, plaintiff was a participant in the temporary work release program ("TWRP") at Queensboro Correctional Facility. Plaintiff's 56.1 Statement ("Pl. 56.1 Stmt."), ¶ 1. Roucchio commenced participation in the work release program in June of 1990, and until the events in question transpired, his performance was "satisfactory." Id., ¶¶ 1, 3.

While on work release, Roucchio was arrested on March 13, 1991 for driving while intoxicated, driving without a license, and speeding. Id., ¶ 4. He did not, however, notify the work release authorities of his arrest. Id., ¶ 5. Rather, correctional authorities did not learn of his arrest until September 11, 1991. Id., ¶ 6. Upon discovering Roucchio's arrest, a parole officer issued an "inmate misbehavior report" charging the plaintiff with violating the rules and regulations of the temporary release program in connection with the circumstances attending his arrest, his failure to notify work release authorities of this arrest, and for driving a car without permission. Id. On October 17, 1991, plaintiff pled guilty to the traffic infraction of operating a motor vehicle while impaired by the consumption of alcohol, in violation of section 1192(1) of the New York Vehicle and Traffic Law. Id., ¶ 8.

Immediately upon the issuance of the inmate behavior report, Roucchio claims that he was placed in segregated confinement in the Special Housing Unit ("SHU") at the Queensboro Correctional Facility. Id., ¶ 7. Defendants, however, contend that there is no SHU for Temporary Release inmates at Queensboro, and that Roucchio was never assigned to a SHU cell. Defendants' 56.1 Statement, ¶ 1. Nevertheless, plaintiff claims that he remained in SHU for forty-seven days, until October 28, 1991. Pl. 56.1 Stmt., ¶ 10.

On October 22, 1991, the Temporary Release Committee ("TRC") at Queensboro met to review and evaluate the plaintiff's conduct. Id., ¶ 11. A separate disciplinary hearing was not held in tandem with this proceeding. Id., ¶ 12. Meeting without the plaintiff in attendance, the TRC recommended that Roucchio be removed from the Queensboro TWRP. Id., ¶ 14. The committee report was approved by the Superintendent of the facility on October 26, 1991. Id., ¶ 15. This decision subsequently was affirmed by the New York State Director of Temporary Release Programs. Id., ¶ 16.

On October 27, 1991, in light of the Superintendent's decision removing Roucchio from

each defendant. Complaint, Section V, at page 6. Plaintiff seeks no other relief. On April 1994

Roucchio was released on parole. Plaintiff's 56.1 Stmt., ¶ 21.

the Queensboro TWRP, plaintiff was transferred from the Queensboro Correctional Facility to the Fishkill Correctional Facility, and the next day transferred to the Franklin Correctional Facility. Cplt., Section III, at 3.

By petition dated January 22, 1992, plaintiff instituted a proceeding pursuant to Article 78 of the New York Civil Practice Law & Rules challenging his removal from TWRP. ["Article 78 proceeding"]. Pl. 56.1 Stmt., ¶ 17. In the notice of petition, plaintiff claimed that his right to due process was violated because he did not receive a hearing before the TRC removed him from TWRP. *Id.*

On or about April 17, 1992, the plaintiff, still at Franklin Correctional Facility, was notified that a hearing would be held five days later to consider his removal from TWRP. *Id.*, ¶ 18. Roucchio, however, refused to attend the hearing. *Id.* This hearing was postponed, and was conducted in plaintiff's absence on April 23, 1992. *Id.*, ¶ 19. As a result of this hearing, it was again determined that plaintiff should be removed from TWRP. *Id.*

By decision dated June 18, 1992, the New York Supreme Court, Queens County, dismissed plaintiff's Article 78 petition on the ground that plaintiff's "removal from the work release program was lawful." *Id.*, ¶ 20. Roucchio appealed the judgment of the Supreme Court to the Appellate Division, Second Department. *Id.* Roucchio was released on parole in April 1994, while this appeal was pending. *Id.*, ¶ 21. On October 17, 1994, the Second Department unanimously affirmed the dismissal of the petition, finding that the plaintiff "failed to establish that the respondent violated any statutory requirement or denied his constitutional rights in reaching his determination." *Id.*, ¶ 22.

On September 13, 1994, plaintiff commenced the present action alleging that the defendants, by removing him from TWRP, violated his due process rights because he was not provided any notice of the October 22, 1991 TRC hearing that resulted in his formal removal from the program. *Id.*, ¶ 23.

## LEGAL STANDARD

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under the law of the Second Circuit, a district court must weigh several considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994) (internal case citations omitted). First, the moving party carries the burden to demonstrate that no genuine issue respecting any material fact exists. *Id.* Second, all ambiguities and inferences must be resolved in favor of the non-moving party. *Id.* Third, the moving party may obtain summary judgment by showing that no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight. *Id.* Finally, the trial court's duty is confined to issue-finding and does not extend to issue-resolution. *Id.*

In evaluating the above considerations, a court must be mindful of whether the purported factual dispute is material, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Liberty Interest in Remaining in TWRP

The core of Roucchio's complaint is that he was deprived of his Fourteenth Amendment right to procedural due process because the defendants did not give him a timely opportunity to be heard in connection with his removal from the TWRP. *See* Cplt., Section III, at 3–4. Otherwise stated, Roucchio alleges that the defendants deprived him of a liberty interest in his continued participation in the TWRP without affording him constitutionally sufficient procedures.

The Fourteenth Amendment provides in part that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This component, otherwise known as the safeguard of procedural due process, "protects 'the individual against arbitrary action of government.'" *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). As the Supreme Court has explained, procedural due process questions are analyzed in two steps:

> the first asks whether there exists a liberty or property interest which has been interfered with by the State, *see Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Roth,* 408 U.S. at 577, 92 S.Ct. 2701, and must be based on more than "a unilateral hope." *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Kentucky Department of Corrections,* 490 U.S. at 460, 109 S.Ct. 1904 (citation forms modified). "Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" *Id.* (quoting *Hewitt,* 459 U.S. at 466, 103 S.Ct. 864).

Two years ago, this Court applied the then-recent Supreme Court decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and denied the defendants' motion to dismiss the complaint in this action. *Roucchio v. Coughlin,* 923 F.Supp. 360 (E.D.N.Y.1996) (*"Roucchio I "*). The Court held that Roucchio failed to allege a liberty interest in continued participation in

the TWRP that was inherent in the Due Process Clause. Id. at 370. However, the Court read the pleadings broadly, as required when considering a motion to dismiss, and especially where a plaintiff is proceeding *pro se. See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Therefore, for the purpose of the motion to dismiss, this Court held that Roucchio's allegation that he was deprived of a state-created liberty interest in his continued participation in the TWRP was sufficient to defeat the motion to dismiss. Id. at 377; *see also Severino v. Negron,* 996 F.2d 1439, 1442 (2d Cir.1993) ("it has been clear since *Tracy* that a liberty interest exists in a work release program"); *Tracy v. Salamack,* 572 F.2d 393, 395–96 (2d Cir.1978) (per curiam).

Specifically, the Court denied the defendants' motion to dismiss because, accepting the pleaded facts as true, "the revocation of [Roucchio's] conditional freedom ... worked a 'major disruption' in his prison environment ... and imposed 'an atypical and significant hardship upon him in relation to the ordinary incidents of prison life.'" *Roucchio I,* 923 F.Supp. at 374–75 (quoting *Sandin,* 515 U.S. at 484–86, 115 S.Ct. 2293)(internal brackets omitted).

At the time, the Court specifically reserved decision on the question whether, after discovery had been completed, the evidence would "negate the presence of a liberty interest." Id. at 376. In order to determine whether Roucchio's expectation of continued participation in the TWRP was justifiable, the Court necessarily had to wait, in order to view more fully the contours of "the statute, regulations, and practice of New York State concerning the rights of inmates within the program." *Klos v. Haskell,* 48 F.3d 81, 87 (2d Cir.1995).

Since this Court's decision in *Roucchio I,* and despite the language of *Tracy* and *Severing,* courts continue to disagree about whether a participant in a TWRP has a due process right to a hearing before he or she may be removed from the program. *See, e.g., Garcia v. Payne,* 97 Civ. 0880, 1998 WL 50207, at *2 (S.D.N.Y. Feb.9, 1998) (listing cases); *Pena v. Recore,* 95 Civ. 5307, 1997 WL 581058, at *1 (E.D.N.Y. Sept.16, 1997)

(same); *Dudley v. Coombe,* 96 Civ. 1665, 1997 WL 423074, at *1 (S.D.N.Y. July 29, 1997) (holding that removal from TWRP is not an atypical hardship of prison life).

The Court declines to address the question again at this time, because even if a liberty interest is implicated, Roucchio's § 1983 claim is not cognizable. Moreover, the defendants are entitled to qualified immunity.

## II. Application of *Heck* and *Edwards*

■ In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court addressed the question whether a state prisoner could challenge the constitutionality of his conviction in an action for damages under 42 U.S.C. § 1983. The Court analogized § 1983 actions to the common-law cause of action for malicious prosecution. *Id.* at 484, 114 S.Ct. 2364. The Court noted that an essential element of the tort of malicious prosecution was the "termination of the prior criminal proceeding in favor of the accused." *Id.* (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on Law of Torts 888 (5th ed.1984)). Without such a decision in favor of the accused, a cause of action for malicious prosecution amounted to a highly disfavored collateral attack on the validity of the conviction. The Court pointed out the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* Reasoning therefrom, the Court maintained that Section 1983 actions "are not appropriate vehicles for challenging the validity of outstanding criminal judgments ... that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* Thus, the Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of this conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486–87, 114 S.Ct. 2364. The Court gave concrete examples of situations in which such questions may arise. *See id.* at 487, nn. 6–8, 114 S.Ct. 2364. Of particular importance is the Court's explanation in footnote seven, where the Court stated that "[i]n order to recover compensatory damages, ... the § 1983 plaintiff must prove not only that the [defendant's action] was unlawful, but that it caused him actual, compensable injury, which, we hold today, *does not encompass the 'injury' of being convicted and imprisoned* (until his conviction has been overturned)." *Id.* (emphasis added).

Three years later, building on its decision in *Heck,* the Supreme Court held that a state prisoner's § 1983 claim for money damages, based on allegations of deceit and bias of the decisionmaker that would necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983. *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997). Balisok, the prisoner/plaintiff in *Edwards,* had alleged that his right to procedural due process under the Fourteenth Amendment was violated by state officials at a disciplinary hearing where he had been found guilty of prison infractions and was sentenced to time in isolation, segregation, and loss of good-time credit. *Id.* at 1586. The Court pointed out that Balisok had alleged defects in the procedure involved in his hearing, but not defects in the result of the hearing. *Id.* at 1587. Balisok further alleged that the cause of the procedural defects was the deceit and bias of the decisionmaker. *Id.* at 1588. The Court observed that the "principal procedural defect complained of by [Balisok] would, if established,

necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* The establishment of the § 1983 claim would therefore create two different resolutions arising from the same transaction, a result that is highly disfavored. *See Heck,* 512 U.S. at 484, 114 S.Ct. 2364.

Therefore, the Court held that "[Balisok's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 1589. This ruling thus extended the rationale of *Heck* from § 1983 due process challenges to a prisoner's conviction or sentence, to due process challenges arising from alleged defects in internal prison hearings or administrative actions. *See id.* at 1587–89. In doing so, the Court overruled the Court of Appeals for the Ninth Circuit, which had ruled that a claim challenging only the procedures (not the result) of a disciplinary hearing was always cognizable under § 1983. *Id.* at 1587.

The applicability of *Edwards* and *Heck* to Roucchio's precise situation appears to have been addressed only by one court in this circuit. In *Garcia v. Payne,* 97 Civ. 0880, 1998 WL 50207, at *1 (S.D.N.Y. Feb.9, 1998), Judge Batts applied *Edwards* in dismissing a § 1983 claim alleging procedural defects in a Temporary Release Committee hearing during which the plaintiff was removed from the temporary release program. Judge Batts pointed out that the plaintiff's claims of procedural defects, if proven, would necessarily imply the invalidity of the TRC's decision to remove him from temporary release. *Id.,* at *3. Because the plaintiff had not shown that the TRC's decision to remove him from temporary release had been invalidated or otherwise called into question, the court held that the claims were not cognizable under § 1983.

*Id.* Judge Batts granted the defendants' Rule 12(b)(6) motion to dismiss. *Id.*

However, other courts in this circuit have confined *Edwards* to situations where the plaintiff prisoner has alleged due process violations only in disciplinary proceedings, and only where loss of good time credits were lost as a result thereof. *See, e.g., Jackson v. Johnson,* 15 F.Supp.2d 341, 349–50, 97 Civ. 1592, 1998 WL 427286, at *7 (S.D.N.Y. July 23, 1998) (Kaplan, J.); *Silva v. Sanford,* 91 Civ. 1776, 1998 WL 205326, at *13 (S.D.N.Y. April 24,1998) (Peck, M.J.). These decisions, however, seem to conflict with the Supreme Court's expansion of the applicability of common law principles announced in *Heck.* The *Heck* Court took pains to highlight the "species of tort liability" created by 1983, *Heck,* 512 U.S. at 483, 114 S.Ct. 2364, and the fact that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments ... that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486, 114 S.Ct. 2364. The *Edwards* Court expanded on this theme by applying the same principle to due process challenges to prison disciplinary hearings involving the deprivation of good-time credits. *Edwards,* 117 S.Ct. at 1589; *see also Burnell v. Coughlin,* 975 F.Supp. 473, 477 (W.D.N.Y.1997) (Larimer, C.J.) ("I believe that [the *Edwards* ] rationale extends to any kind of punishment that implicates a liberty interest"); *Stone–Bey v. Barnes,* 120 F.3d 718, 720–21 (7th Cir.1997) (applying *Heck* and *Edwards* to prison disciplinary hearings). This Court finds that the principles first enunciated in *Heck* and elaborated upon in *Edwards* also apply to the situation now before the Court.

Similar to the *Edwards* plaintiff, Roucchio makes no challenge to the result of the TRC's determination. Rather, a broad reading of the complaint makes clear that he challenges only the procedures involved.[2]

---

**2.** In all likelihood, a challenge to the result of the TRC determination would fail. Roucchio admits that he was arrested in Nassau County for driving while intoxicated while he was a participant in the temporary work release program. Cplt., Section III, at page 2. He also admits that he failed to report this arrest to the "work release authorities." *Id.* Roucchio admits that he signed a Memorandum of Agreement which gov-

erned his temporary work release status, and that participation in the TWRP was clearly a privilege and not a right. Roucchio Affidavit, ¶ 6 and Exh. 4. Roucchio acknowledges that he was in fact driving a motor vehicle, in contravention of ¶ 11 of the Memorandum of Agreement, although he disputes that he was, at the time of such operation, intoxicated. Roucchio Aff., ¶ 8. He also admits that the failure to report his

Roucchio claims that he was denied due process because the TRC at Queensboro met on October 22, 1991, without informing Roucchio and in his absence, to review and evaluate his conduct and his further eligibility for the TWRP.[3] Cplt., Section III, at page 3. Roucchio's complaint is elaborated upon in his affidavit, where he makes several unsupported allegations of conspiracy and collusion on the part of the defendants, framing these issues as based in document tampering, failure to produce a tape recording of the Queensboro TRC's meeting, forgery of signatures, and other occurrences which Roucchio claims cannot possibly be coincidences. Roucchio Aff., ¶¶ 11, 13–14, 16–17. Roucchio also expresses "genuine doubt" that a TRC meeting was even held on October 22, 1991. Pl. 56.1 Stmt., ¶ 11 & n. 1. He also doubts that the Superintendent of the facility ever approved the report and recommendation of the TRC. *Id.*, ¶ 15. In sum, his allegations, like those of the *Edwards* plaintiff, are based on the deceit and bias of the defendants. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 12 (accusing defendants of lying, fraud, and filing a false report).

Even if these allegations were true, Roucchio's claim for money damages, if decided in his favor, would necessarily imply the invalidity of the punishment (removal from the TWRP) imposed. Under *Edwards*, in order to have a cognizable claim under 42 U.S.C. § 1983, Roucchio is required to show that the decision to remove him from The TWRP was invalidated. Absent such a showing, he may not collaterally attack, through a § 1983 ac-

tion, the validity of the punishment imposed on him because of his arrest and failure to report that arrest to his parole officer. *See Edwards*, 117 S.Ct. at 1589; *Heck*, 512 U.S. at 484–85, 114 S.Ct. 2364; *see also Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir.1996) (holding that, under *Heck*, a § 1983 due process challenge does not accrue unless disciplinary ruling is first reversed by state court); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995) ("[a] claim for damages based on a conviction or sentence that has not been invalidated . . . is not cognizable under § 1983."); *Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir.1994) (same); *Burnell*, 975 F.Supp. at 477 (holding that *Edwards* rationale extends to any punishment that implicates a liberty interest).

Roucchio cannot show that his punishment was invalidated. In fact, the TRC's removal decision was ratified by the Superintendent of the Facility on October 26, 1991, and was later approved by the New York State Director of Temporary Release Programs. Later, by a decision dated June 18, 1992, the New York State Supreme Court, Queens County, dismissed Roucchio's Article 78 petition on the ground that his removal from work release program was lawful. Plaintiff's 56.1 Statement, ¶ 20. On October 17, 1994, the Appellate Division, Second Department, unanimously affirmed the dismissal of the petition, finding that Roucchio had failed to establish that the defendants had violated any statutory requirement of denied his constitutional rights in reaching that determination. *Id.*, ¶ 22. A finding in this forum that plaintiff's due process rights were violated as

---

arrest to his parole officer violated ¶ 8(d) of the Memorandum of Agreement. *Id.*

**3.** The defendants claim that plaintiff is confusing two separate and very distinct procedures under the procedures for removal of an inmate from TWRP as set forth in Title 7 of the New York Code of Rules and Regulations, Part 1904. Defendants claim that the hearing on October 22, 1991 was a "programmatic review" held pursuant to 7 N.Y.C.R.R. § 1904.2(a), which requires no hearing before an inmate is removed from TWRP. Plaintiff claims that the TRC hearing was instead a "disciplinary removal," pursuant to 7 N.Y.C.R.R. § 1904.2(h), which would require a hearing before a removal decision was made, if the misbehavior report was relied upon to ground the removal. Defendants counter by ad-

mitting that Roucchio's misbehavior report was rendered invalid by their failure to adjudicate the report within seven days, as required by N.Y.C.R.R. § 251–5.1. However, defendants claim that the TRC can conduct a programmatic review at any time, and that it was this programmatic review that the TRC held, not a disciplinary removal. If Roucchio were correct that his removal was a disciplinary removal, the fact that it has not been reversed lends greater weight to the application of *Heck* and *Edwards* in this case because those cases dealt factually with disciplinary hearings. Regardless of the name given to the TRC's October 22, 1991 removal decision, the decision has not been invalidated, and thus Roucchio's claim is not cognizable under 1983. *See* discussion, *infra.*

a result of the deceit and bias of the defendants would necessarily result in a disfavored type of collateral attack on the punishment imposed upon the plaintiff. In this case, the finding also would result in two different judicial resolutions arising out of the same transaction. It is for these reasons that *Heck* and *Edwards* require that, because plaintiff's removal from the TWRP has not been invalidated, the claim is not cognizable under § 1983.

■ Finally, even if Roucchio's claim were valid under the *Edwards* and *Heck* analysis, he also is obliged to show that the alleged unconstitutional acts of the defendants caused him actual, compensable injury— which does not include the "injury" of being removed from the TWRP. *Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364. Roucchio has made no such showing.

## III. Qualified Immunity

■ The doctrine of qualified immunity protects government officials from civil suits arising from performance of their discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity shields government employees from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Whether an official may invoke qualified immunity "generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established'" when the action was taken. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727).

■ In order to establish qualified immunity, a defendant government official must demonstrate that his or her conduct "did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." *Prue v. City of Syracuse,* 26 F.3d 14, 17 (2d Cir.1994). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Id.* (quoting *Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034). The defense of qualified immunity "may be established as a matter of law, warranting summary judgment in favor of the defendant official." *Black v. Coughlin,* 76 F.3d at 75.

■ Prior to examining each defendant's role in this action, the Court finds that all of the defendants are entitled to qualified immunity on the basis that the boundaries of a liberty interest in remaining in a TWRP, sufficient to give rise to the right to a preremoval hearing are unclear. *See Severino,* 996 F.2d at 1442 (granting the defendants qualified immunity because of the "fuzziness" of an inmate's liberty interest in TWRP); *see also Garcia,* 1998 WL 50207, at *2 (listing conflicting cases); *Pena,* 1997 WL 581058, at *1 (same); *Dudley,* 1997. WL 423074, at *1 (holding that removal from TWRP is not an atypical hardship of prison life). Due to this intra-circuit conflict, it is unreasonable for the defendants to have been aware of the existence of a "clearly established right" to a hearing prior to removal from TWRP at the time these events occurred.

### A. Defendant Coughlin

■ Defendant Thomas A. Coughlin, III, was the Commissioner of the Department of Correctional Services ("DOCS") during the period of time relevant to this complaint. The complaint alleges that Coughlin became aware that Roucchio's rights had been violated as early as January 1992. Cplt., Section IV.C., at 5. Plaintiff alleges that Coughlin "not only failed to correct the situation but compounded the statutory and due process violations by allowing an April 22, 1992 hearing and subsequent order of removal." *Id.* Plaintiff further claims that Coughlin is liable because Coughlin had a statutory duty to investigate plaintiff's claims and that he failed to supervise the actions of the disciplinary staff. Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, at 6–7. Roucchio cites New York Correction Law § 112 in support of his claims against Coughlin.

The record indicates that upon receipt of the Article 78 proceeding, Coughlin (through the Attorney General's office) opposed the petition. Alvarez Aff., Exh. B. The New York State Supreme Court dismissed the petition, finding no merit to Roucchio's claim, and the Second Department upheld that decision. The Court finds that Coughlin's actions did not violate Roucchio's "clearly established" constitutional rights and his actions were objectively reasonable. Nor did Coughlin violate § 112 of the Correction Law. Thus, Coughlin is entitled to qualified immunity.

### B. Defendant Lester

■ William Lester, sued herein as "John" Lester, was a Senior Counselor and Chairman of the Queensboro TRC. Lester Deposition, at 22. Plaintiff alleges that Lester recommended his removal from the TWRP despite knowing that the requirements of due process were not met. Cplt., Section IV.A., at 5. Roucchio further alleges that Lester held a TRC meeting in plaintiff's absence, even though Lester knew that plaintiff was present at Queensboro. *Id.*

The record indicates that Lester recommended Roucchio's release from the TWRP on the basis of his arrest, driving without a license, and speeding. Roucchio Aff., Exh. 7. This recommendation followed the issuance of an inmate misbehavior report filed by Roucchio's parole officer. *Id.*, Exh. 6. The recommendation form 4187 indicates that Roucchio was referred for "program evaluation." *Id.*, Exh. 7.

Roucchio's claims of fraud, document tampering, and lying by Lester are speculative. The Court finds that Lester did not violate any of Roucchio's clearly established constitutional or statutory rights of which a reasonable person would have known, as those rights pertain to Roucchio's due process claim. Thus, Lester is entitled to the protection of qualified immunity.

### C. Defendant Recore

■ Defendant James F. Recore was at all relevant times the Director of Temporary Release Programs for DOCS. Recore Aff., ¶ 1. Plaintiff claims that Recore reviewed his

appeal from the TRC's October 22, 1991 decision, and "affirmed the illegal removal despite the absence. of the statutorily mandated hearing procedure." Cplt., Section IV.B., at 5.

However, Recore had delegated the authority to review Roucchio's appeal to defendant Edward Delph, the Assistant Director of Temporary Release Programs. Recore Aff., ¶ 22. Such delegation is objectively reasonable. There is no support for plaintiff's allegations that Recore himself affirmed the Queensboro TRC removal decision. As a result, Recore is entitled to qualified immunity.

### D. Defendant Delph

■ As mentioned above, defendant Edward Delph was the Assistant Director of Temporary Release Programs for DOCS. *Id.* Part of Delph's duties was the review of TRC removal decisions. *Id.* Plaintiff alleges that Delph "reviewed the illegal Second Removal Hearing held by Defendant Yelich and affirmed its findings despite his knowing that there is no authorization within the Rules of the Removal Procedure . . . to hold a Second Removal Hearing." Cplt., Section IV.E., at 6.

The problem with this allegation is that Roucchio's claim is that he was denied due process during the *October 22, 1991* hearing which resulted in his removal from TWRP. Roucchio's assertion of the illegality of the Second Removal Hearing, held *April .23, 1992,* is unsupported. Moreover, plaintiff's arguments relating to Delph are limited to an assertion that Delph was so swamped with paperwork that he "only looked at the bare form to see whether the t's were crossed and the i's had dots on them." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 13. Thus, the Court finds that Delph did not violate any of Roucchio's clearly established statutory or constitutional rights of which a reasonable person would have been aware, and that his actions were objectively reasonable. Delph is entitled to qualified immunity.

## E. Defendant Hernandez

 Charles P. Hernandez was Superintendent of Queensboro at the time of the events in question. Hernandez Deposition, at 9–10. Plaintiff alleges that Hernandez allowed and affirmed the TRC's decision to remove him from TWRP knowing that the process the TRC had engaged in was defective. Cplt., Section IV.F., at 6. Hernandez, though charged with the responsibility of reviewing TRC determinations, denies that he actually signed the TRC's October 22, 1991 decision form 4187. Hernandez Deposition, at 95. Hernandez testified that in his absence, defendant Lester was authorized to sign such forms. *Id.* at 96.

Regardless of whether Hernandez did or did not sign the form 4187, the Court finds that he did not violate any clearly established right of which a reasonable person would have known. If he did not sign the form, then he was not personally involved and cannot be held liable. *See Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065–66 (2d Cir. 1989). If Hernandez did sign the form, his behavior was objectively reasonable, in light of the fact that Roucchio had been called for a programmatic review, and that he had violated several terms of the Memorandum of Agreement signed as a condition of participation in TWRP. *See* note 2, *supra.* Thus, Hernandez is entitled to qualified immunity.

## F. Defendant Yelich

 Bruce Yelich was a Senior Counselor and the TRC Chair at Franklin Correctional Facility in April, 1992. Yelich Response to First Set of Interrogatories ("Yelich Interr."), ¶ 1. Yelich chaired the Second Removal Hearing on April 23, 1992. Yelich Interr., ¶ 4. Plaintiff alleges that Yelich's actions in reissuing the order removing Roucchio from TWRP violated his due process rights. Cplt., Section IV.D., at 5–6.

The Court finds that Yelich's behavior in holding the April 23, 1992 removal hearing was objectively reasonable, and the Yelich did not violate plaintiff's statutory or constitutional rights. Yelich was instructed to hold a hearing by Delph and Recore and simply complied with that instruction. Yelich Interr., ¶ 4. If anything, Yelich attempted to preserve Roucchio's due process rights by delaying the Franklin TRC hearing, after the plaintiff refused to attend the hearing originally scheduled for April 22, 1992. Yelich Interr., ¶ 7. Yelich is therefore entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, plaintiff's motion is DENIED, and the complaint is dismissed. The Clerk of the Court is directed to mark this case as closed.

SO ORDERED.